UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ZINNAT RAHMAN,                                      22 Civ. _____
                                                    COMPLAINT

                              Plaintiff,            PLAINTIFF
                                                    DEMANDS A
                                                    JURY TRIAL

            -against-

MARTHA CARLIN, DAVID CLOSE,
DANIEL RAGONE, GERALD DECUSATIS,
NEW YORK STATE, and THE NEW YORK STATE
OFFICE OF MENTAL HEALTH,

                              Defendants.

----------------------------------------------------------x

        Plaintiff Zinnat Rahman ("Rahman" or "Plaintiff"), by her

undersigned counsel, complaining of Defendants, alleges as follows:

                            *NATURE OF CLAIMS*

        1.      Rahman, who is an employee on the State of New York

working in the Office of Mental Health, brings this action because the

above-referenced Defendants unlawfully retaliated against her for opposing

their employment discrimination against her on the basis of her

race/ethnicity and her national origin, in violation of the Equal Protection

Clause of the Fourteenth Amendment of the Constitution of the United

States through 42 U.S.C. § 1983 ("Section 1983"). The same conduct also constitutes a violation by the Defendants of the anti-retaliation provisions of federal law, 42 U. S. C. § 2000e-3(a) (Title VII retaliation); the anti-discrimination provisions of 42 U. S. C § 1981 (prohibiting race discrimination and retaliation in the employment relationship); and state law, the New York State Executive Law § 296 (state law prohibiting employment discrimination and retaliation).

2.     Rahman seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief under federal and state law.

*PARTIES*

3.     Plaintiff Zinnat Rahman is a 49-year old woman whose national origin is Bangladesh and whose race is identified as Asian and whose color is identified as of dark skin.

4.     Defendant Martha Carlin is and was at all relevant times one of Rahman's supervisors and the Director of the Long Island Field Office for the New York State Office of Mental Health.  Carlin is sued in her individual and official capacities.

5.     Defendant David Close is and was at all relevant times one of Rahman's supervisors and the Deputy Director of the Long Island Field

2

Office for New York State Office of Mental Health.  Close is sued in his individual and official capacities.

6.     Defendant Daniel Ragone is and was at all relevant times the Assistant Director of Personnel for the New York State Office of Mental Health.  Ragone is sued in his individual and official capacities.

7.     Defendant Gerald DeCusatis is and was at all relevant times the Assistant Director of Employee Relations for the New York State Office of Mental Health.  DeCusatis is sued in his individual and official capacities.

8.     Defendant, the State of New York, is and was at all relevant times Rahman's employer.  The State of New York is subject to liability and equitable relief under the Fourteenth Amendment to the United States Constitution and under Title VII, 42 U. S. C. § 2000e *et seq.*

9.     Defendant, the New York State Office of Mental Health, is and was at all relevant times Rahman's employer and a department, agency or office of the State of New York.

*JURISDICITON AND VENUE*

10.     This Court has federal question jurisdiction over plaintiff's federal claim under 28 U.S.C. § 1331 and 28 U.S.C. § 1343 and supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. § 1367.

11.     This Court is an appropriate venue for this action under 28 U.S.C. § 1391(b)(1) because one or more defendants reside in this judicial district.

*STATEMENT OF FACTS*

12.     Rahman has a B.A. in Psychology from Marymount College in New York and a M.A. in Information Systems from Pace University.

13.     In June of 2005 Rahman started working as a Rehabilitation Counselor for the New York State Office of Mental Health ("OMH").

14.     After three years of satisfactory work, Rahman was promoted to the position of Compliance Specialist for Assisted Outpatient Treatment.

15.     As a Compliance Specialist, Rahman's primary duties related to making sure that facilities and personnel in the mental health field were complying with their obligations in providing care for, and supervision of, mental health patients after patients have been release from a mental health institution.

16.     From June of 2005 through April of 2019, Rahman satisfactorily performed her duties as a Compliance Specialist and receive satisfactory or better performance evaluations for her work as a Rehabilitation Counselor and as a Compliance Specialist.

17.     On April 29, 2019, however, Rahman filed a charge of race/color/national origin discrimination against her supervisors and her employer based on a claim of failure to promote and unequal pay.

18.     After Defendants Carlin and Close learned of Rahman's charge of discrimination in about May or June of 2019, Defendants Carlin and Close, as Rahman's supervisors, engaged in a series of retaliatory actions against Rahman to punish her for filing her discrimination claims, including the following acts:  harassing her on the job by secretly taking photographs of her at work; threatening her with termination; placing her on administrative leave without justification; placing her on worker's compensation leave; misusing their authority to intimidate Rahman through a series of "interrogations" of her; ostracizing her from her co-workers; giving her an unsatisfactory performance evaluation; acting in a verbally abusive manner towards her; and otherwise creating a toxic and hostile work environment for Rahman.

19.     The facts and the specific acts of retaliation are set forth below.

20.     On April 29, 2019, Rahman filed a Complaint/Charge of Discrimination with the New York State Division of Human Rights (the "SDHR") and the Equal Employment Opportunity Commission (the "EEOC"), alleging unlawful discriminatory employment practices in

violation of state and federal law arising from a failure to promote Rahman and to pay her equally.  The grounds for the discrimination arose from Rahman's race (Asian), color (dark skin) and county of origin (Bangladesh)

21.     In later May or early June of 2019, Defendants Carlin and Close were interviewed about Rahman's allegations against each of them, and as such, each became aware of Rahman's charge of discrimination, which is protected activity under federal and state law.

22.     On about October 31, 2019, SDHR dismissed Rahman's Complaint/Charge.

23.     Just a few days later, on November 4, 2019, Carlin, who was seated adjacent to Close at an office meeting at the Long Island Field Office, secretly took two photographs of Rahman without Rahman's consent or knowledge that the photographs were being taken.

24.     Upon information and belief, Carlin and Close obtained the photographs of Rahman as part of their plan to falsely cast Rahman in a negative light and to fabricate information about purported performance deficiencies, in retaliation for her April 2019 charge of discrimination against them.

25.     The act of taking photographs of Rahman violated work place rules of privacy and were not justified by any business or other necessity.

26.     On November 13, 2019, Rahman complained about this intimidating behavior by Carlin ad Close to Defendant Ragone, who works for the Office of Mental Health in a human resources capacity.

27.     At that time, Rahman also expressed to Ragone her safety concerns arising from this incident because Close had previously questioned Rahman without any context about whether her home possessed security cameras.

28.     As a result of the photographing of Rahman and the questions about security cameras in her home, Rahman became alarmed that Carlin and Close were planning to cause her harm or were going to take further steps to invade her privacy.

29.     On November 15, 2019, Ragone responded to Rahman's complaint by calling Rahman on the telephone and demanding, in a verbally abusive manner, that Rahman immediately answer his questions regarding her complaint about the photographs taken by Carlin and Close.

30.     Rahman told Ragone that she needed time to consult with her union representative or an attorney and was not comfortable in responding to him absent such consultation.

31.     Ragone became enraged at Rahman and issued her a "direct order" to answer his questions and threatened her with "insubordination" charges.

32.     The pressure created by Ragone on Rahman was extremely intimidating and as a result Rahman told Ragone that she was withdrawing her complaint.

33.     On November 22, 2019, Rahman was served with a Notice of Interrogation.  The Notice did not provide Rahman with any information about the subject or target of the "interrogation."

34.     On January 9, 2020, Rahman was interrogated by Defendant DeCusatis, who also works in a human recourses capacity for the Office of Mental Health.

35.     During the interrogation, DeCusatis insisted that Rahman disclose to him who told her that Carlin and Close had secretly photographed Rahman.

36.     Rahman declined to identify the source, who was also an employee at the Office of Mental Health, because Rahman had already withdrew her complaint and she did not want her supervisors to retaliate against her co-worker.

37.   During the interrogation, DeCusatis was verbally abusive and he frequently threatening Rahman with discipline for insubordination.

38.   On February 28, 2020, Rahman received another Notice of Interrogation.

39.   On March 9, 2020, Rahman was again interrogated by DeCusatis.

40.   As with the prior interrogation, DeCusatis was verbally abusive and frequently threatening Rahman with discipline for insubordination.

41.   At the conclusion of the interrogation session, DeCusatis informed Rahman that she was being placed on an involuntary and indefinite "administrative leave."

42.   At the conclusion of the interrogation session, DeCusatis ordered Rahman to collect her personal belongings and leave the premises immediately.

43.   Rahman was publically humiliated when she was when escorted like a criminal out of the office in front of her colleagues and directed to surrender her identification card and office keys.

44.   The act of placing Rahman on leave without notice and the act of needlessly escorting her like a common criminal off the premises was

traumatic and extremely humiliating to Rahman and has caused her to suffer significant anxiety.

45.    Rahman's administrative leave lasted more than four months, until July 13, 2020.

46.    After Rahman returned to work from the forced administrative leave, on August 5, 2020, Rahman received a Notice of Discipline instigated, upon information and belief, by Carlin, Close, Ragone and DeCusatis, and signed by Amy M. Rodak, OMH Director of Bureau of Central Office Personnel Services.

47.    The Notice of Discipline lists nonsensical charges and proposes a penalty consisting of an eight-week suspension without pay.

48.    The Notice of Discipline also contained an attachment about "Resignation," which was a not-too-subtle suggestion by the defendants that Rahman should resign.

49.    The Notice of Discipline identified four grounds for discipline: (1) an allegation that Rahman was insubordinate when she wrote to her supervisor that she did not wish to participate in a one-day picnic "retreat" for which attendance was voluntary; (2) an allegation that Rahman was "inattentive" during a November 2019 staff meeting; (3) an allegation that Rahman's performance was lacking in regard to how she tracked over a

10

period of time incoming calls or complaints from the public, even through

Rahman had already been rated satisfactory in that particular category of

her duties for that period of time; and (4) an allegation of insubordination

related to Rahman's refusal to disclose the name of the co-worker who told

her about Carlin's and Closes photographing Rahman.

50.     Upon information and belief, the Notice of Discipline was

orchestrated by the individual defendants in retaliation because Rahman

filed her  Charge of Discrimination against Carlin and Close.

51.     On about August 31, 2020, Rahman received an Unsatisfactory

Performance Evaluation.  This was the first unsatisfactory evaluation that

Rahman had ever received since she began working for OMH 15 years ago

in 2005.

52.     On or about July 28, 2021, Rahman filed a complaint and

charge of retaliation against the defendants with the SDHR and the EEOC.

53.     On about May 12, 2022, the defendants informed Rahman that

she was being removed from the payroll of the Office of Mental Heath due

to a workplace injury, that in order to received any employment benefits or

pay she need to apply for coverage through worker's compensation

coverage, and that she was subject to termination.

54.     Upon information and belief, the Defendants could have accommodated Rahman and were not required to remover her from the payroll, but did so for ongoing retaliatory reasons.

55.     As a result of the Defendants' conduct toward Rahman, Rahman's mental health has suffered dramatically.

56.      As a result of the Defendants' conduct toward Rahman, Rahman is now required to take medication to address the anxiety that the Defendants have caused her since she filed her Compliant and Charge of Discrimination in April of 2019.

57.     On about March 8, 2022, the EEOC issued to Rahman a right to sue based on Rahman's charge of retaliation with the SDHR and the EEOC and Rahman has complied with and satisfied all prerequisites to suit.

*FIRST CAUSE OF ACTION*

58.     Rahman repeats and realleges each of the foregoing allegations as if set forth herein at length

59.     By the acts and practices described above, including but not limited to creating a hostile work environment and by taking multiple adverse employment actions against Rahman, the State of New York, the Office of Mental Health and the individual defendants, Carlin, Close, Ragone and DeCusatis, in their individual and official capacities and under

color of state law, retaliated against Rahman in the terms and conditions of her employment because she opposed discrimination in employment and participated in an investigation of discrimination, in violation of 42 U. S. C. 2000e-3(a).

60.     As a result of the defendants' retaliatory actions, Rahman has suffered and will continue to suffer irreparable injury, monetary damages, and damages for mental anguish, emotional distress, and humiliation.

61.     The individual defendants, Carlin, Close, Ragone and DeCusatis, engaged in these practices with malice and with reckless indifference to Rahman's federally protected rights.

<em>SECOND CAUSE OF ACTION</em>

62.     Rahman repeats and realleges each of the foregoing allegations as if set forth herein at length.

63.     By the acts and practices described above, including but not limited to creating a hostile work environment, the State of New York, the Office of Mental Health and the individual defendants, Carlin, Close, Ragone and DeCusatis, in their individual and official capacities and under color of state law, retaliated against plaintiff in the terms and conditions of her employment because she opposed discrimination in employment and participated in an investigation of discrimination, thus depriving plaintiff of

her right under the Equal Protection Clause of the United States

Constitution, in violation of 42 U. S C. Section 1983, which prohibits

discrimination on the bases of race, color and national origin and also

prohibit retaliation against persons who had opposed any discriminatory

employment practice or act.

64.     As a result of the defendant's retaliatory actions, Rahman has

suffered and will continue to suffer irreparable injury, monetary damages,

and damages for mental anguish, emotional distress, and humiliation.

65.     The individual defendants, Carlin, Close, Ragone and

DeCusatis, engaged in these practices with malice and with reckless

indifference to Rahman's federally protected rights.

*THIRD CAUSE OF ACTION*

66.     Rahman repeats and realleges each of the foregoing allegations

as if set forth herein at length.

67.     By the acts and practices described above, including but not

limited to creating a hostile work environment, the State of New York, the

Office of Mental Health and the individual defendants, Carlin, Close,

Ragone and DeCusatis, in their individual and official capacities and under

color of state law, retaliated against plaintiff in the terms and conditions of

her employment because she opposed discrimination in employment and

participated in an investigation of discrimination, thus depriving plaintiff of her right under 42 U. S C. Section 1981, which prohibits discrimination on the bases of race, color and national origin in the employment relationship.

68.    As a result of the defendant's retaliatory actions, Rahman has suffered and will continue to suffer irreparable injury, monetary damages, and damages for mental anguish, emotional distress, and humiliation.

69.    The individual defendants, Carlin, Close, Ragone and DeCusatis, engaged in these practices with malice and with reckless indifference to Rahman's federally protected rights.

*FOURTH CAUSE OF ACTION*

70.    Rahman repeats and realleges each of the foregoing allegations as if set forth herein at length.

71.    By the acts and practices described above, defendants retaliated against plaintiff in the terms and conditions of her employment because she participated in an investigation of gender discrimination in employment and opposed discriminatory practices, in violation of the New York State Executive Law § 296.

72.    As a result of defendants' retaliatory acts, Rahman has suffered and will continue to suffer irreparable injury, monetary damages, and damages for mental anguish, emotional distress, and humiliation.

15

73.     The individual defendants, Carlin, Close, Ragone and DeCusatis, engaged in these practices with malice and with reckless indifference to Rahman's rights protected under state law.

## FIFTH CAUSE OF ACTION

74.     Rahman repeats and realleges each of the foregoing allegations as if set forth herein at length

75.     Rahman continues to be employed by the defendants and continues to be subject to ongoing retaliatory harassment and abuse by the defendants in violation of federal and state law.

76.     As a result, Rahman is entitled to an injunction, declaratory judgment, and an order of the Court finding that the defendants have violated Rahman's rights and directing the defendants to stop taking retaliatory actions against Rahman.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an order, judgment and decree:

(a)     declaring the acts and practices complained of herein in violation of Title VII, 42 U. S. C. § 2000e-3(a), 42 U. S. C.§§ 1981 and 1983, and New York Executive Law § 296;

(b)     permanently restraining these violations;

(c)     directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment;

(d)     directing defendants to place plaintiff in the position she would be in but for defendants' discriminatory and retaliatory treatment of her, and to make her whole for all earnings and employment benefits she would have received but for defendants' discriminatory and retaliatory treatment;

(e)     awarding plaintiff compensatory damages for her mental anguish, emotional distress, and humiliation;

(f)     directing defendants Carlin, Close, Ragone and DeCusatis, to pay plaintiff punitive damages;

(g)     awarding plaintiff pre-judgment and post-judgment interest, as well as reasonable attorney's fees and the costs of this action; and

(h)     awarding such other and further relief as the Court deems necessary and proper.

*DEMAND FOR JURY TRIAL*

Under Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff

demands a trial by jury in this action.

Dated: New York, New York
      June 6, 2022

                         *s/Nathaniel B. Smith*
                         _____
                         Nathaniel B. Smith
                         225 Broadway – Suite 1901
                         New York, New York 10007
                         natbsmith@gmail.com
                         212-227-7062
                         Attorney for Plaintiff